IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

FRANCISCO CHOMYO GARCIA, II, INDIVIDUALLY
AND ON BEHALF OF THE ESTATE OF VICTORIA
AVA LYNN GARCIA, DECEASED AND ANY AND ALL
WRONGFUL DEATH BENEFICIARIES OF VICTORIA
AVA LYNN GARCIA, DECEASED                                             PLAINTIFF

V.                                              CIVIL ACTION NO. 2:12cv167-KS-MTP

PREMIER HOME FURNISHINGS,
TERRY HOOD D/B/A AMERICAN HERITAGE OF
ALABAMA, HOUSTON WOOD PRODUCTS, INC. AND
JOHN DOE DEFENDANTS 1-10                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the Plaintiff's Motion to Remand. Plaintiff argues that this Court lacks subject matter jurisdiction because the parties are not diverse. The Defendants argue that Premier Home Furnishings ("Premier") was improperly joined for the sole purpose of defeating diversity and, thus, should be disregarded when determining diversity. Having considered the submissions of the parties, the record and applicable law, the Court finds that there is no reasonable basis for recovery against Premier and the motion to remand should be **denied**.

### I.  BACKGROUND

Francisco Chomyo Garcia, II (Plaintiff), along with his fiancée Courtney Jackson, purchased a bunk bed for his two children at Premier. The bunk beds were manufactured by Houston Wood Products and sold to Premier Home Furnishings by Terry Hood d/b/a American Heritage of Alabama. After the sale of the bunk bed and as part of its regular customer service, Premier offered to deliver and assemble the furniture for Garcia free of charge. Jackson accepted, and a few days later Premier delivered and assembled the bunk beds at the home of Garcia. There were no warning labels on the bunk beds, nor was Garcia provided with

instructions or any other literature regarding safety or product warnings. On February 6, 2012, Garcia put his daughter, Victoria Ava Lynn Garcia, deceased, and his other child to bed. The next morning Victoria was found dead, hanging by her head and neck from the top bunk bed.

Plaintiff filed suit in Mississippi state court. Defendants removed to federal court, claiming that Garcia had improperly joined Premier, the only non-diverse defendant, and, therefore, complete diversity exists among the parties. Plaintiff then submitted a motion to remand and to stay proceedings pending remand decision. The Court then allowed discovery on a limited number of remand related issues.

## II.  STANDARD OF REVIEW

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action to federal court if the action could have been brought there originally. In cases of removal, the removing party has the burden of proving that the federal court has jurisdiction to hear the case. *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993). Furthermore, when a defendant alleges diversity jurisdiction based on a improper joinder, the defendant has the "heavy burden" of proving the improper joinder. *Marathon Oil Co. v. Ruhrgas, A.G.*, 115 F.3d 315, 319 (5th Cir. 1997). "A claim of fraudulent joinder must be pleaded with particularity and supported by clear and convincing evidence." *Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962). There are two ways that a defendant can prove improper joinder: "(1) that there was actual fraud in the plaintiff's pleading of the jurisdictional facts or (2) that the plaintiff has no possibility of establishing a cause of action against the non-diverse defendant in state court." *Howard v. CitiFinancial, Inc.,* 195 F.Supp.2d 811 (S.D. Miss. 2002); *see Griggs v. State Farm Lloyds,* 181 F.3d 694, 699 (5th Cir. 1999). The Defendants have not asserted fraud in the pleadings, so the

Court's analysis is limited to determining whether the plaintiff has a possibility of recovery against the non-diverse defendant.

The issue of improper joinder may be resolved in one of two ways: (1) by using a 12(b)(6) type analysis, or (2) "piercing the pleadings" and using a summary judgment type analysis. Although the trial court is given discretion in deciding how to resolve these issues, the court in *Smallwood v. Illinois Cent. R. Co.* cautioned that "piercing the pleadings" should be done only to "identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." 385 F.3d 568, 573 (5th Cir. 2004). Once the court has pierced the pleadings, as in the case at hand, the court may consider affidavits and deposition transcripts in conducting a "summary judgment-like procedure." *Carriere v. Sears, Roebuck and Co.,* 893 F.2d 98, 100 (5th Cir. 1990); *see B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981).

In the Court's analysis, any disputes and ambiguities in the law must be resolved in favor of the plaintiff. *Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 42 (5th Cir. 1992). After viewing the facts in the light most favorable to the plaintiff, the court must look to determine if the plaintiff has a "reasonable basis" of recovery against the non-diverse defendant. *Travis v. Irby,* 326 F.3d 644, 647 (5th Cir. 2003). Stated another way, the defendant must prove that there is "absolutely no possibility that the plaintiff will be able to establish a cause of action." *Griggs*, 181 F.2d at 699. "This possibility, however, must be reasonable, not merely theoretical." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir. 2002).

### III. ANALYSIS

When reviewing Plaintiff's claims against Premier, the Court will examine each of the claims in turn. The Court weighs each claim while considering the heavy burden placed on the

3

Defendants to prove that there is no possibility of recovery against Premier. Plaintiff's charges "need have only a modicum of sturdiness" for the Defendants' claim to be defeated and joinder to be found proper. *Dodson,* 951 F.2d at 43. Applying this analysis, the Court finds that there is no reasonable basis for recovery against Premier.

**A.      Products Liability**

The Defendants contend that the joinder of Premier was improper because Premier is entitled to the protection afforded under the innocent seller provision in Miss. Code Ann. § 11-1-63(h). Plaintiff contends that Premier is not immune under the innocent seller provision because: (1) Premier exercised substantial control over the aspect of manufacture that resulted in harm, and (2) Premier had actual or constructive knowledge of the defective condition at the time he sold the product. [Doc. #23] (Mem. in Supp. of Mot. to Remand and for Stay of Proceedings Pending Remand Decision). The Court finds that because Premier was acting as a "mere conduit" of the bunk beds, Plaintiff cannot possibly recover under Mississippi products liability law.

> *1.      Whether Premier exercised substantial control over the manufacture of the product.*

In order for Premier to fall under the first listed exception to the innocent seller provision, Plaintiff must be able to show that Premier "exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought…" Miss. Code Ann. § 11-1-63(h). Plaintiff contends that Premier substantially controlled an aspect of the manufacture that caused the harm. The Mississippi Supreme Court has defined "manufacturer" as a person or company that "'regularly, and *in the course of their principal business, create, assemble and/or prepare goods for sale to the consuming public*.' In other words a manufacturer produces goods as a principal

4

part of its business *and* sells them either directly or for resale to the consuming public." *Scordino v. Hopeman Bros., Inc.,* 662 So.2d 640, 645 (Miss. 1995) (*quoting Olson v. Ulysses Irrigation Pipe Co., Inc.,* 649 F.Supp. 1511 (Dist.Kan. 1986)) (emphasis in original). The Mississippi Supreme Court further elaborated on this definition in *Lawson v. Honeywell International, Inc.* by stating that "[t]he Scordino Court's definition implies that the manufacturer of a good is the person or company who brings the good into its tangible form – the point at which the good is ready for sale, or resale, to the consuming public." 75 So.3d 1024, 1029 (Miss. 2011). Although Plaintiff cites both of these cases in his brief, he fails to apply them to the applicable facts. Even when Plaintiff's assertion is taken as true, Premier cannot be found to have assembled bunk beds in order to sell them to the consuming public. The assembly was a customary service provided to all customers after Premier sold a product. Ergo, Premier's assembly cannot be seen as an act of manufacturing. In addition, Premier did not bring the good into its "tangible form" because the product was already completely formed. Premier simply put together the previously formed parts of a completed product. Therefore, the Court finds there to be no reasonable basis for finding that Premier exercised substantial control over the manufacture of the product.

    2.    *Whether Premier had actual knowledge of the defective condition.*

Another exception to the innocent seller provision is for sellers that have "actual or constructive knowledge of the defective condition of the product at the time he supplied the product." Miss. Code Ann. § 11-1-63(h). However, merely asserting legal conclusions is not enough for proper joinder— "vague and conclusory allegations" must be supported by fact. *Murray v. General Motors, L.L.C.,* 478 Fed.Appx. 175, 180 (5th Cir. 2012). The only facts that Plaintiff has alleged about Premier's knowledge of the defect is that Premier knew that there

were no warning labels on the product.[1] Nonetheless, taking this fact in the light most favorable to the Plaintiff, there is still a missing link between a seller knowing that there are no warning labels on the bed and knowing that the bed is a defective product. John Owens, as a 30(b)(6) representative of Premier, stated that he "was not aware [the bunk beds] were missing [the warning labels]." [Doc. #45, Exh. C at 58:5-6] (Dep. of John Owens). Additionally, when Owens was asked when he knew that warning labels were required on the bunk beds he replied, "[w]hen the investigator with the Consumer Protection Agency came to my store." *Id.* at 87:11-12. Therefore, the fact that Premier noticed that there were no warning labels does not also prove that it knew that was a defect.

Plaintiff purports to show that the "facts alleged in the Complaint, Courtney Jackson's affidavit, and the Answer of Defendant Premier clearly provide a basis for potential liability…" [Doc. #27 at 6] (Resp. in Opp'n re Mot. to Stay Proceedings Pending Disc. on Pl.'s Mot. to Remand). With regard to these alleged facts, they are insufficient to form a reasonable basis for liability. The documents listed, taken in the light most favorable to Plaintiff, show only that Premier saw that the bunk beds did not have a warning label. However, Plaintiff must further show that Premier knew that a warning label was required, which he has failed to do.

   *3.   Whether Premier had constructive knowledge of the defective condition.*

While it has been determined that it is not reasonably possible that Premier had actual knowledge of the defect, separate consideration should be given to determine whether Premier had constructive knowledge of the same. Black's Law Dictionary defines constructive knowledge as "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Black's Law Dictionary* 888 (8th ed. 2004).

---

[1] In the Answer to the Complaint, Premier admits that there were no warning labels on the bunk beds. [Doc. #4, ¶ 9] (Premier's Answer to Compl.). This admission was unclear but was later clarified through remand related discovery.

The court will only attribute constructive knowledge when a seller, "with reasonable care and diligence," should have been aware of the defect prior to sale. Merely pleading that a defendant should have known about a defect is not enough. A plaintiff must bring forth facts that show such constructive knowledge existed at the time of sale. Plaintiff claims that Premier knew that the bunk bed did not possess a warning label. The Court must now determine if this knowledge coupled with the fact that Premier is in the furniture business could possibly yield constructive knowledge of the defect.

The constructive knowledge provision was contested in *Fife v. Polaris Industries, Inc.* and *Johnson v. Daimler Chrysler Corp.* In *Fife*, the plaintiff brought a product liability suit against Polaris and an in-state retailer of a defective ATV. 2007 WL 534215 (S.D. Miss. February 15, 2007). The plaintiff alleged that the retailer had knowledge of pending recalls and, therefore, knew of the defective condition. *Id.* The court, after allowing remand related discovery, concluded that there was no evidence to show that the retailer knew, or should have known, about the recalls. *Id.* Also, the court found that a 30(b)(6) deposition of the retailer supported Polaris's allegations. *Id.* In *Johnson,* a similar set of facts were presented. 2006 WL 3511438 (S.D. Miss. December 5, 2006). However, this Court concluded that recalls had been issued before the defective product was sold, giving the retailer constructive knowledge of the defect. *Id.* at 2.

Here, Plaintiff's argument turns on what is considered reasonable for a furniture business to know about safety regulations. To find liability the Court would have to conclude that Premier *should* have known that a warning label is required on all children's bunk beds. If Premier has a duty to know the plethora of manufacturer's regulations for all of the products that it sells, then reading the facts in the light most favorable to the plaintiff might produce the "modicum of

sturdiness" necessary to defeat the Defendants' claim of improper joinder. This Court rejects such an argument. A retailer, "after reasonable care and diligence," is not required to be well versed in all of the manufacturing requirements set forth in the Consumer Product Safety Commission guidelines. Moreover, to hold a furniture seller to that standard would drastically expand the risk of liability and be contrary to the stated purpose of the innocent seller provision.[2]

After reviewing the Complaint, Answer, and remand related discovery, the Court finds no evidence presented by Plaintiff to prove that Premier should have known that warning labels were required on children's bunk beds. Plaintiff offers no facts to support the assertion of constructive knowledge, other than the admission by Premier that warning labels were not provided on the bunk beds.[3] When faced with testimony that Premier did not have knowledge of the defective condition, Plaintiff simply claims that "Premier's admitted ignorance of the federal requirements…is just more evidence of the negligence inherent in sale of the subject bunk-bed." [Doc. #47 at 5] (Reply to Resp. to Mot. re Resp. to Mot. to Remand). This appears to be an attempt to evade the law at issue, namely the innocent seller provision, rather than address it directly. In addition, the Defendants have presented evidence to the contrary, showing that Premier did not have any knowledge of the defective condition. Therefore, the Court finds there to be no possibility of recovery under this Mississippi product liability law. This holding is consistent with the stated purpose of the innocent seller provision, which is "to immunize innocent sellers who are not actively negligent, but instead are mere conduits of a product."

---

[2] "It is the intent of this section to immunize innocent sellers who are not actively negligent, but instead are mere conduits of a product." Miss. Code Ann. § 11-1-63(h).

[3] Plaintiff asserts that the "facts alleged in the Complaint, as well as the Answers of Premier Home Furnishings, show that Premier Home Furnishings sold the subject bunk beds to the Plaintiffs with actual and/or constructive knowledge regarding the defective condition…" [Doc. #21 at 7] (Mem. Br. in Supp. of Pl.'s Mot. to Remand). However, after examining the documents listed by Plaintiff, the Complaint is simply a blanket assertion that Premier "knew, or in light of reasonably available knowledge should have known, about the dangers of the manufacture of the bunk beds that caused the damage…" [Compl. ¶ 25].

Miss. Code Ann. § 11-1-63(h).  Plaintiff has not pleaded sufficient facts to be able to prove Premier was anything other than a "mere conduit."

### B.     Negligence or Gross Negligence

Plaintiff claims that negligence or gross negligence is applicable because of Premier's assembly of the bed. Negligence claims are frequently brought alongside product liability claims, and the courts have established a standard for handling such claims. *See Williams v. Ford Motor Co.,* 2012 WL 2990165, at 3 (N.D. Miss. July 20, 2012); *Murray,* 478 Fed. Appx. at 181*; McKee v. Bowers Window & Door Co.,* 64 So.3d 926, 940 (Miss. 2011); *McSwain v. Sunrise Med., Inc.,* 689 F.Supp.2d 835, 846 (S.D. Miss. 2010); *Moss v. Batesville Casket Co., Inc.,* 935 So.2d 393, 406 (Miss. 2006). While "'negligence claims can be brought alongside strict liability claims,' *McSwain,* 689 F.Supp.2d at 846, a party may not disguise a products liability claim as a negligence claim to avoid dismissal." *Murray,* 478 Fed.Appx. at 181.

Essentially, Plaintiff is arguing here that Premier was negligent because it assembled bunk beds that contained a manufacturing defect. This appears to be "nothing more than an attempt to disguise" a product liability suit as negligence. *Id.* Similar to Garcia, the plaintiff in *Murray* alleged that the defendant was negligent for "failing to locate and fix a design defect." *Id.* at 182. The court in *Murray* found that the innocent seller provision works to immunize the seller from the negligence claim as well. By the same logic, Plaintiff here "fails to present any new discussion or claim that does not relate back to the product liability claim." *Moss,* 935 So.2d at 406.

### C.     Breach of Express and Implied Warranties

Plaintiff's third claim against Premier is for breach of express and implied warranties. As previously discussed, alternative theories of liability are often brought by plaintiffs in addition to

product liability claims. The question for the courts has been whether immunity for innocent sellers extends beyond product liability claims. The majority of federal courts in Mississippi have interpreted Miss. Code Ann. § 11-1-63(h) as barring claims for breach of warranty against any seller that falls under the innocent seller provision. *Land v. Agco Corp.,* 2008 WL 4056224, at 3 (N.D. Miss. August 25, 2008)*; Gardner v. Cooksey,* 2012 WL 968026, at 4 (S.D. Miss. March 21, 2012); *Willis v. Kia Motors Corp.,* 2007 WL 1860769 (N.D. Miss. June 26, 2007)*; Jones v. Gen. Motors Corp.,* 2007 WL 1610478, at 3 (S.D. Miss. June 1, 2007). While, "the Mississippi Supreme Court has held that the MPLA does not preclude a claim for breach of warranty…it is still subject to the innocent seller exemption in a products liability action." 478 Fed.Appx. at 179. Moreover, "[t]he MPLA [Mississippi Products Liability Act] applies to 'any action for damages caused by a product.'" *Gardner,* 2012 WL 968026, at 4 (*quoting* Miss. Code Ann. § 11-1-63). A plaintiff cannot proceed under an implied warranty theory in order to circumvent the products liability statute. *Gardner,* 2012 WL 968026 at 4. The language of Miss. Code Ann. § 11-1-63(h) "evidences a clear intent to provide immunity for innocent sellers for all claims related to products liability, including those brought under an implied warranty theory." *Land,* 2008 WL 4056224, at 3. Therefore, the innocent seller provision applies here as well and bars recovery for implied warranties.

      Additionally, Plaintiff's complaint does not refer to any specific express warranties made by Premier, and "the Court does not accept as fact 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Jones,* 2007 WL 1610478, at 5 (*quoting Plotkin v. IP Axess Inc.,* 407 F.3d 690, 696 (5th Cir.2005). The complaint only provides detail when it alleges a breach of the implied warranty, and, even then, Plaintiff does not provide any evidence to show that Premier is anything other than a mere conduit of the bunk beds. *See* [Compl. ¶ 3]. A claim

for breach of express warranty, while it is not abrogated by the Mississippi product liability law, "is still subject to the innocent seller exemption in a products liability action." *Murray,* 478 Fed.Appx. at 179. As such, Plaintiff's claim of breach of express warranty provides no possibility of recovery against Premier.

## IV.  CONCLUSION

Based on the record, the court concludes that Premier is an innocent seller pursuant to Miss. Code Ann. § 11-1-63(h). Therefore, Premier has been improperly joined and should be dismissed as a defendant. Accordingly, Premier should be disregarded for purposes of diversity, and, as a result, complete diversity exists among the parties. Wherefore, premises considered the Court denies the motion to remand.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Plaintiff's motion to remand is **denied and the stay is lifted.**  The parties are directed to contact the chambers of Magistrate Judge Michael T. Parker within ten (10) of the entry of this Order to arrange for a scheduling conference.  Premier Home Furnishings is **dismissed without prejudice**.

SO ORDERED AND ADJUDGED on this, the 6th day of August, 2013.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE