**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**FRANCISCO CHOMYO GARCIA, II, INDIVIDUALLY
AND ON BEHALF OF THE ESTATE OF
VICTORIA AVA LYNN GARCIA, DECEASED AND
ANY AND ALL WRONGFUL DEATH BENEFICIARIES
OF VICTORIA AVA LYNN GARCIA, DECEASED                           PLAINTIFFS**

**VS.                                               CAUSE NO. 2:12cv167-KS-MTP**

**PREMIER HOME FURNISHINGS,
TERRY HOOD D/B/A AMERICAN HERITAGE OF ALABAMA,
HOUSTON WOOD PRODUCTS, INC. AND
JOHN DOE DEFENDANTS 1-10                                          DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Plaintiffs' Motion to Reconsider [53]. Having considered the submissions of the parties, the record and the applicable law, the Court finds that the motion should be denied.

### I. BACKGROUND

On August 6, 2013, the Court found that the Plaintiffs had no reasonable basis for recovery against the Defendant Premier Home Furnishings ("Premier") since it was an "innocent seller" of the product alleged to have caused injury in this case under section 11-1-63(h) of the Mississippi Code. (*See* Mem. Op. & Order [48].) The Court thus determined that Premier was improperly joined, and denied Plaintiffs' Motion to Remand [19] predicated on the absence of complete diversity of citizenship due to the Plaintiffs and Premier being citizens of Mississippi. In addition, the Court dismissed Premier from the litigation without prejudice. Plaintiffs' Motion to Reconsider [53] requests that the Court nullify its prior order and remand this action to the Circuit Court of Forrest County Mississippi.

## II.  DISCUSSION

### A.     Standard of Review

The Federal Rules of Civil Procedure do not explicitly recognize a motion to reconsider.  However, this Court and others consider such motions under Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment), when they are filed within twenty-eight days of the challenged judgment or order.  *See, e.g.*, *B & C Marine, LLC v. Cabiran*, No. 12-1015, 2013 WL 950562, at *1 (E.D. La. Mar. 11, 2013); *Garrison v. Tex. S. Univ.*, No. H-11-2368, 2013 WL 247028, at *1 (S.D. Tex. Jan. 22, 2013); *Insurasource, Inc. v. Fireman's Fund Ins. Co.*, No. 2:11cv82, 2012 WL 1365083, at *1-2 (S.D. Miss. Apr. 19, 2012).  On August 13, 2013, only seven (7) days after the entry of the subject Order [48], Plaintiffs submitted an unopposed request to file a motion to reconsider on or before September 30, 2013.  (*See* Mot. for Ext. of Time [51].)  The Court granted this request and Plaintiffs filed their Motion to Reconsider [53] on September 9, 2013.  Therefore, the Court will reference Rule 59(e) and its interpretive precedent in this opinion and order.

The Court only recognizes three grounds for reconsideration under Rule 59(e): "'(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, and (3) the need to correct a clear error of law or prevent a manifest injustice.'"  *Nationwide Mut. Fire Ins. Co. v. Pham*, 193 F.R.D. 493, 494 (S.D. Miss. 2000) (quoting *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990)).  Plaintiffs' motion is limited to the third ground of the above-quoted standard.  With respect to this ground, the Court has previously cautioned that the litigant "should evaluate whether what may seem to be a clear error of law is in fact

simply a point of disagreement between the Court and the litigant." *Atkins*, 130 F.R.D. at 626.  A Rule 59(e) motion is not a proper vehicle for raising arguments or legal theories that could have been presented prior to the entry of the challenged ruling.  *See Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012) (citing *Marseilles Homeowners Condo. Ass'n v. Fidelity Nat. Ins. Co.*, 542 F.3d 1053, 1058 (5th Cir. 2008)), *cert. denied*, 2013 WL 868621 (Oct. 7, 2013).  "Whatever may be the purpose of Rule 59(e), it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge."  *Pham*, 193 F.R.D. at 494.

      **B.**     **Analysis**

As an initial matter, Plaintiffs contend that there was some "confusion" with respect to whether the Court would resolve the issue of Premier's improper joinder based on the pleadings or via a summary inquiry, and that the confusion resulted in the Plaintiffs' failure "to present by discovery or argument all of the overwhelming facts and legal arguments that clearly establish the fault of Premier."  (Mot. to Recon. [53] at pp. 1-2.)  This contention is not well taken.  The Court's Order [30], permitting remand related discovery on certain issues for a period of ninety days, should have put all the parties on notice that the Court would, "in its discretion, pierce the pleadings and conduct a summary inquiry" in deciding if the Plaintiffs might be able to recover against Premier. *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013) (citation omitted).  Further, Plaintiffs' Reply [47] in support of their remand motion referenced "the testimony given and the evidence produced during remand related discovery" in opposition to Defendants' position that Premier was an "innocent seller" under Mississippi law.  (Reply [47] at pp. 1-2.)  Finally, the prudent course for the Plaintiffs would have been for them

to bring the issue of any "confusion" regarding the procedure for resolving the remand motion to the Court's attention before it decided the motion.

The Court also notes that all of the evidence presented and arguments urged in support of reconsideration of the Court's Order [48] could have been offered prior to the entry of the ruling. In other words, Plaintiffs cite no authorities handed down or evidence discovered subsequent to August 6, 2013, in their Motion to Reconsider [53]. It is well established that Rule 59(e) is an improper "vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). At the same time, a motion for reconsideration implicates two significant judicial imperatives: "1) the need to bring litigation to an end; and 2) the need to render just decisions on the basis of all the facts." *Id.* (citing *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990)). There has been no final judgment in this case and jurisdictional issues have precluded the entry of a case management order. Therefore, the need to end this litigation is not yet implicated and the Court considers below Plaintiffs' positions in support of reconsideration even though they could have been asserted prior to the entry of the Order [48]. Plaintiffs' remaining arguments not specifically addressed herein have been considered and fail to alter the Court's ruling on the Motion to Reconsider [53].

    **1.**    **Premier's Alleged Failure to Follow Consumer Product Safety Commission Regulations**

Plaintiffs contend that they could recover from Premier due to its failure to comply

with regulations promulgated by the Consumer Product Safety Commission ("CPSC"). The CPSC "prescribes requirements for bunk beds to reduce or eliminate the risk that children will die or be injured from being trapped between the upper bunk and the wall or in openings below guardrails or in other structures in the bed." 16 C.F.R. § 1513.1. For example, bunk beds intended to be used by children must contain a warning label advising, *inter alia*, to "[n]ever allow a child under 6 years on upper bunk". 16 C.F.R. § 1513.5. Such bunk beds must also include written instructions pertaining to mattress size and certain safety warnings. *See* 16 C.F.R. § 1513.6. Title 15 U.S.C. § 2068 makes it unlawful for any person to "sell" or "manufacture for sale" any consumer product "that is not in conformity with an applicable" CPSC regulation. 15 U.S.C. § 2068(a)(1). For purposes of resolving the remand motion, the Court determined that the bunk beds sold by Premier to the Plaintiff Francisco Chomyo Garcia, II did not include any warning labels or written instructions of any kind. Thus, Plaintiffs allege that at the very least, they would be entitled to a negligence *per se* instruction against Premier for its violation of CPSC regulations.

      Plaintiffs' argument fails to require amendment of the Court's ruling that Premier is protected from liability under section 11-1-63(h) for several reasons. First, the statute does not contain an exception to the protection from liability afforded to "innocent sellers" based on a violation of a federal regulation. Section 11-1-63 provides that a seller shall not be liable in any action alleging that a product is defective unless: (1) "the seller exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought;" (2) "the seller altered or modified the product, and the alteration or

modification was a substantial factor in causing the harm for which recovery of damages is sought; or" (3) "the seller had actual or constructive knowledge of the defective condition of the product at the time he supplied the product." Miss. Code Ann. § 11-1-63(h). No rule of statutory construction allows the Court to create a fourth exception based on the sale of a product violating a federal regulation. *See Barton v. Blount*, 981 So. 2d 299, 303 (¶ 13) (Miss. Ct. App. 2007) ("[T]his Court cannot omit or add to the plain meaning of the statute or presume that the legislature failed to state something other than what was plainly stated.") (citation omitted).

Second, the Consumer Product Safety Act ("CPSA"), 15 U.S.C. §§ 2051-2089, does not completely preempt or replace state law causes of action. *See Summerlin v. Scott Petroleum Corp.*, 324 F. Supp. 2d 810, 811-12, 814 (S.D. Miss. 2004) (rejecting the defendants' contention that the CPSA preempted the plaintiff's state law claims, including allegations that a cigarette lighter was defectively designed, tested and manufactured, and remanding the suit due to the absence of federal question jurisdiction). Although the CPSA authorizes a private right of action by any person sustaining injury due to a knowing violation of a consumer product safety rule,[1] Plaintiffs have disclaimed any federal cause of action. (*See* Mot. to Remand [19] at p. 5) ("[T]here is no federal question to form the basis for federal jurisdiction."). As a result, the Court finds that the above-cited regulations enacted by the CPSC under the authority of the CPSA do not trump or displace the protections afforded to Premier by section 11-1-63(h) in this suit alleging injury in connection with a defective product under

---

[1] *See* 15 U.S.C. § 2072(a).

Mississippi law.

Third, the exceptions to seller immunity stated under section 11-1-63(h) are not implicated even if Premier violated 16 C.F.R. §§ 1513.5 or 1513.6 by selling the subject bunk beds without warning stickers or written instructions. The remand related discovery conducted by the parties evidences that the manufacturer of the bunk beds, Houston Wood Products, Inc. ("Houston Wood"), was responsible for packaging the beds with instructions and placing warning stickers on the beds before they left its facility. (*See* Wade Dep. [45-2] 15:14-20, 21:21-22:18, 26:9-27:3.)[2] Thus, Premier cannot be said to have "exercised substantial control over that aspect of the . . . packaging or labeling of the product that caused the harm for which recovery of damages is sought". Miss. Code Ann. § 11-1-63(h). There is also no allegation, much less proof, that Premier "altered or modified the product" by removing warning stickers or instructions supplied with the bunk beds before they were furnished to the Plaintiffs. *Id.* The Court's review of the discovery record also fails to support a finding that Premier "had actual or constructive knowledge" that the bunk beds were defective due to the absence of warning labels and instructions. *Id.* Ultimately, finding that Premier could be held liable under Mississippi law for selling bunk beds without labels and written instructions would conflict with the intent of section 11-1-63(h) "to immunize innocent sellers who are not actively negligent, but instead are mere conduits of a product."

### 2. Premier's Alleged Negligent Installation of the Bunk Beds

The Court previously determined that a few days after the sale of the bunk beds,

---

[2] Ellis Wade, Jr. is Houston Wood's corporate president. (*See* Wade Dep. [45-2] 7:10-13.)

Premier delivered and assembled the beds at the Plaintiffs' residence. (*See* Mem. Op. & Order [48] at p. 1.) The Court also found Plaintiffs' negligent assembly allegation "to be 'nothing more than an attempt to disguise' a product liability suit as negligence." (Mem. Op. & Order [48] at p. 9) (quoting *Murray v. Gen. Motors, L.L.C.*, 478 Fed. Appx. 175, 181 (5th Cir. 2012)). Plaintiffs now contend that Premier's "negligent installation" of the subject bunk beds renders section 11-1-63(h) inapplicable. (Rebuttal Mem. in Supp. of Mot. to Recon. [59] at p. 2.) Whether Premier's conduct is labeled "negligent assembly" or "negligent installation" does not change the fact that this is an "action for damages caused by a product" in which the Plaintiffs allege "a product is defective". Miss. Code Ann. § 11-1-63. Therefore, the Court's findings with respect to Plaintiffs' products liability allegations against Premier are also dispositive of any duplicative negligence allegations. *See, e.g.*, *Murray*, 478 Fed. Appx. at 181; *Williams v. Ford Motor Co.*, No. 3:11cv110, 2012 WL 2990165, at *3 (N.D. Miss. July 20, 2012); *McKee v. Bowers Window & Door Co.*, 64 So. 3d 926, 939-40 (¶¶ 39-41) (Miss. 2011).

      Plaintiffs' reliance on two Mississippi Supreme Court cases decided more than forty (40) years ago in support of their negligent installation allegation is unavailing. *See State Stove Mfg. Co. v. Hodges*, 189 So. 2d 113 (Miss. 1966); *Toler v. Owens*, 231 Miss. 753, 97 So. 2d 728 (Miss. 1957). Both *Hodges* and *Toler* were decided long before the Mississippi Legislature's 2004 enactment of section 11-1-63(h)'s innocent seller provision. Furthermore, *Hodges* and *Toler* are clearly distinguishable from the facts of this case. In *Toler*, the plaintiff purchased the subject "furnace from a seller other than defendant, and arranged for . . . [the defendant] to install it." 97 So. 2d at 728. Consequently, the *Toler* defendant could not have been considered a seller,

innocent or otherwise, under section 11-1-63(h) even if the statute had existed in 1957.

In *Hodges*, defendant contractors sold plaintiffs an electric hot water heater and, through an agent plumber, installed the heater in the plaintiffs' home. 189 So. 2d at 122-23. The water heater did not reach the plaintiffs "'without substantial change in the condition in which' the manufacture sold it" since the plumber installed a pressure relief valve and a check valve even though he should have installed a combination temperature and pressure valve in the heater. *Id.* at 122. The evidence showed "that manufacturers of water heaters commonly do not install such safety appliances, which are customarily and more conveniently installed by a plumber." *Id.* The evidence here shows that all of the components making up the bunk beds (including headboards, footboards, side rails, warning labels and instructions, but excluding mattresses) should have been placed in boxes containing the bed components before they left Houston Wood's manufacturing facility. (*See* Wade Dep. [45-2] 15:14-16:6, 21:21-22:18, 23:15-18, 26:2-20.) No showing has been made that Houston Wood expected Premier to go out on its own and obtain certain components, such as warning stickers or side rails for the top bunk, before selling the beds to consumers. Therefore, Premier's mere assembly of the bunk beds from the parts and components supplied by Houston Wood cannot be considered a "substantial change in the condition" of the product under *Hodges*. *Id.* For essentially the same reasons, the Court does not consider Premier's assembly or installation of the bunk beds to constitute "substantial control over . . . [the] manufacture" of the beds or "alteration or modification" of the beds under section 11-1-63(h).

The Court also finds Plaintiffs' allegations of negligent installation to be too

conclusory and speculative to preclude a determination of Premier's improper joinder. "[T]here must be a *reasonable* possibility of recovery [against an in-state defendant], not merely a *theoretical one.*"  *Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510, 513, 515 (5th Cir. 2009) (agreeing with the district court's determination that the plaintiffs' conclusory allegations failed to establish a reasonable possibility of recovery against a non-diverse defendant) (citation omitted).  Plaintiffs contend that Premier's negligent installation is confirmed by the deposition testimony of Houston Wood's corporate president, Ellis Wade, Jr., and a comparison of a picture of the subject bunk beds with an advertisement for the same model of bunk beds offered for sale by Premier.

Plaintiffs focus on the following testimony of Wade upon his review of a picture of the subject bunk beds:

> Q:   And what is it that you see that you think is wrong with that bed?
>
> A.   The opening is too great.
>
> Q.   On the top for that --
>
> A.   On the top, yes.

(Wade Dep. [45-2] 65:12-16.)  The Court's review of the entirety of Wade's testimony regarding this subject matter leads to the conclusion that Wade's above-quoted statements were based on the top rail of the subject bunk bed measuring three and one-half inches in height, whereas it should have measured five and one-half inches.  (*See* Wade Dep. [45-2] 19:18-20:3, 46:15-19, 66:16-67:6.)  There is no indication that Wade attributed the size of the opening on the top bunk to Premier improperly positioning the top rail during assembly.  The top rails in the pictures referenced by the Plaintiffs also appear to be of different sizes.  Again, Houston Wood was responsible for

-10-

manufacturing the bunk bed components and packaging them for distribution to retailers such as Premier. Premier had nothing to do with cutting bed rails to specific measurements and placing them in the appropriate boxes. As a result, only speculation and conjecture support Plaintiffs' negligent installation contention against Premier.

### 3. Apportionment of Fault Pursuant to Section 85-5-7 of the Mississippi Code

Plaintiffs further argue that manifest injustice would result from the dismissal of Premier since Houston Wood has asserted the protections of Mississippi's apportionment of fault statute, section 85-5-7, in its Answer and since immunity from liability does not preclude the apportionment of fault under Mississippi law. "Defendant Houston Wood will be able to point out Defendant Premier's negligent installation of the bunk bed while Plaintiffs will be unable to recover against Defendant Premier for that conduct." (Pls.' Rebuttal Mem. in Supp. of Mot. to Recon. [59] at p. 10.) The Fifth Circuit has recognized that section 85-5-7 is an affirmative defense and a defendant must provide sufficient proof of a third party's fault to warrant its application. *See Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP*, 542 F3d. 475, 490 (5th Cir. 2008) (citing *Eckman v. Moore*, 876 So. 2d 975, 989 (Miss.2004)).

This Court is unaware of, and the Plaintiffs fail to cite any opinion refusing to find improper joinder based on one defendant's assertion of an affirmative defense that would preclude it from being held responsible for another party's acts or omissions. In addition, Houston Wood removed this case from the state court on the basis that Plaintiffs have no possibility of recovery against Premier, and has taken the position "that any potential recovery by Plaintiffs cannot be reduced by the 'fault' of Premier

because no such 'fault' exists." (Houston Wood's Resp. to Mot. to Recon. [57] at p. 17.) The Court will not accept a different position from Houston Wood asserted "to suit the exigencies of self interest" in the event this case proceeds to trial. *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004) (describing and applying the doctrine of judicial estoppel) (citation omitted). Accordingly, Houston Wood's section 85-5-7 affirmative defense fails to warrant reconsideration of the Court's Order [48].

### III.  CONCLUSION

The Plaintiffs have failed to show error in the Court's dismissal of Premier and refusal to remand this action to the state court.

IT IS THEREFORE ORDERED AND ADJUDGED that Plaintiffs' Motion to Reconsider [53] is denied.

IT IS FURTHER ORDERED AND ADJUDGED that counsel for the parties are to contact the chambers of the United States Magistrate Judge Michael T. Parker within seven (7) days of the entry of this Order to schedule a case management conference.

SO ORDERED AND ADJUDGED this the 12th day of November, 2013.

>*s/Keith Starrett*
>UNITED STATES DISTRICT JUDGE